UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN T. BURTENSHAW,<br><br>Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 5:16-CV-02243-GJS<br><br>**AMENDED MEMORANDUM OPINION AND ORDER** |

## I. REASON FOR AMENDMENT

This amendment is prompted by Plaintiff's filing of a Motion To Alter Or Amend Judgment, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure on December 27, 2017. [Dkt. 28 ("Motion").] The Motion challenges the Court's November 29, 2017 Judgment, which affirmed the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"). [*See* Dkts. 27 & 28.] On January 18, 2018, Defendant filed an Opposition to the Motion. [Dkt. 31 ("Opposition").] The Court has taken the

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017, and is hereby substituted as the defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

parties' briefing under submission without oral argument.

Federal Rule of Civil Procedure 59(e) authorizes a motion to alter or amend a judgment. In the Ninth Circuit, a Rule 59(e) reconsideration motion is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014). "A motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc) (emphasis original). A district court may also grant a Rule 59(e) motion to "prevent manifest injustice." *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).

Plaintiff's Notice of Motion states that the Motion is based on the ground that "the memorandum and resulting judgment constitute a fundamental and clear error of law based on *Marsh v. Colvin*, 792 F.3d 1170 (9th Cir. 2015)." [Dkt. 29 at p.1.] Subsequently, in the body of the Motion, Plaintiff states that a recent unpublished Ninth Circuit case, *Randazzo v. Berryhill*, No. 16-55907, 2017 WL 6374297 (9th Cir. Dec. 13, 2017), suggest that the case should be reversed and remanded for further proceedings. [Dkt. 29 at pp. 3-4.]

The issue is whether 1500 assembler jobs and 5000 inspector jobs (*i.e.* 6500 total jobs) available nationally constitutes a significant number. *See* 42 U.S.C. § 1382c(a)(3)(B) (providing that claimant is not disabled if he can perform "work which exists in significant numbers either in the region where [he] lives or in several regions of the country"). *Marsh v. Colvin* is not germane to this issue, so the Court assumes that Plaintiff's reference to this case was a typographical error or failure to update a previously used template. In *Randazzo*, the Ninth Circuit found that "[t]he ALJ's error in relying on the vocational expert's testimony regarding the occupation of small products assembler was not harmless because the remaining 10,000

2

electrical accessories assembler jobs found by the expert may not amount to a significant number of jobs in the national economy." (citing 42 U.S.C. § 1382c(a)(3)(B); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (holding that 25,000 jobs in the national economy presented a close call but was sufficient).

The Court has reviewed the two cases cited by Defendant in the Opposition and notes that the cases cited by Defendant and certain cases cited by the Court in its Memorandum, Opinion and Order rely on findings regarding *regional numbers, not national numbers* and, therefore, are not specific to the issue as presented in this case.[2]

In light of *Randazzo*, the Court concludes that 6500 national jobs may not amount to a significant number of jobs in the national economy. Accordingly, the Court finds that reconsideration is warranted and therefore GRANTS Plaintiff's Motion To Alter Or Amend Judgment [Dkt. 29], VACATES the Court's November 29, 2017 Order and Judgment [Dkts. 27 & 28] and issues the following Amended Memorandum Opinion and Order. The Court also issues an Amended Judgment in favor of Plaintiff.

## II. PROCEDURAL HISTORY

Plaintiff Darren T. Burtenshaw ("Plaintiff") filed a complaint seeking review

---

[2] Defendant cites two cases in its Opposition for which it states, "the Ninth Circuit upheld ALJ decisions finding that as few as 5,000 and 6,200 national jobs constituted a significant number." [Dkt. 31 at p.1.] However, the cases cited do no support this proposition. The first case, *Evans v. Colvin*, 2014 WL 3845046 (C.D. Cal. Aug. 4, 2010), aff'd 672 F.App'x 771 (9th Cir. Jan. 10, 2017), was affirmed by the Ninth Circuit based on the ALJ's determination that 600 regional jobs constitutes a significant number. Notably, there was no finding made as to the ALJ's reliance on national numbers. The second case, *De Rivera v. Colvin*, 2016 WL 2982183 (C.D. Cal. May 23, 2016), is a District Court decision currently on appeal before the Ninth Circuit (appeal docketed, No. 16-55884 (9th Cir. June 23, 2016). As of the date of this Order, there has been no decision rendered by the Ninth Circuit in this matter.

of the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 12, 13] and briefs addressing disputed issues in the case [Dkt. 17 ("Pltf.'s Br.") and Dkt. 22 ("Def.'s Br."), Dkt. 23 ("Pltf.'s Reply)].

### III. ADMINISTRATIVE DECISION UNDER REVIEW

In November 2011, Plaintiff filed applications for DIB and SSI, alleging disability as of June 26, 2010.[3] [Dkt. 16, Administrative Record ("AR") 385-93.] Plaintiff's applications were denied at the initial level of review and on reconsideration. [AR 209-18, 225-29, 231-35.] Plaintiff requested a de novo hearing. [AR 237-38.] Administrative Law Judge Troy Silva ("the ALJ") conducted hearings on November 13, 2013, March 10, 2014, April 30, 2014, and April 15, 2015. [AR 45-130.] On May 13, 2015, the ALJ issued an unfavorable decision. [AR 22-36.]

As an initial matter and consistent with *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) and Acquiescence Ruling 97-4(9), the ALJ considered whether Plaintiff had shown "changed circumstances" from the date his prior application for disability benefits was denied. [AR 22.] The ALJ noted that although the prior decision indicated that several of Plaintiff's alleged conditions were severe impairments (*i.e.*, bipolar disorder, restless leg syndrome, and a history of low back pain), the current record did not support those findings. [AR 22.] Nevertheless, the ALJ found that the record developed in the present case supported "additional physical and mental restrictions." [AR 22-23.] Therefore, the ALJ proceeded with the five-step sequential evaluation process.

---

[3] Plaintiff filed prior applications for DIB and SSI benefits. [AR 153.] Those applications were denied initially, on reconsideration, and following a hearing before an administrative law judge in a decision dated June 25, 2010. [AR 153-62.]

At the first step of the disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [AR 25.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of internal derangement of the left knee, human immunodeficiency virus ("HIV"), major depressive disorder, unspecified personality disorder, and attention deficit hyperactivity disorder ("ADHD"). [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations. [AR 26]; *see* 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work (20 C.F.R. §§ 404.1567(b), 416.967(b)), as follows:

> [Plaintiff] can lift and/or carry 20 pounds occasionally[] and 10 pounds frequently. He can stand and/or walk for 4 hours in an 8-hour workday, and only for 30 minutes at a time before he needs to sit for 5 minutes before standing or walking again. The claimant can sit without limitation, other than for normal breaks. The claimant can only occasionally perform postural activities, except he cannot climb ladders, ropes or scaffolds. Moreover, [Plaintiff] is able to perform only non-complex, routine tasks that are object-oriented. He can have only occasional, superficial, and non-intense interactions with co-workers and supervisors, and cannot interact with the public. Furthermore, [Plaintiff] cannot engage in work requiring safety operations, or jobs requiring hypervigilance. Finally, he cannot work around hazards, or with dangerous or fast-moving machinery.

[AR 28.] Applying this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work, but determined that based on his age as a younger individual (45 years old at the time of his alleged onset date), high school education, and work experience, he was capable of making a successful adjustment to other work existing in significant numbers in the national economy, including work as an assembler, inspector, and document preparer and, thus, was not disabled. [AR 34-36.]

The Appeals Council denied review of the ALJ's decision on August 24,

2016. [AR 1-3.] This action followed.

## IV. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## V. DISCUSSION

### A. Plaintiff's RFC and Presumption of Continuing Non-Disability

Plaintiff asserts that the ALJ failed to properly apply the presumption of continuing nondisability by including the prior ALJ's assessment of Plaintiff's mental limitations into Plaintiff's current RFC. [Pltf.'s Br. at 7-9; Reply at 2-3.]

Under *Chavez*, an applicant previously found not disabled is presumably not disabled unless he can show "changed circumstances" indicating a greater level of disability since the date of the prior decision. *Chavez*, 844 F.2d at 693; Acquiescence Ruling 97-4(9). However, "the *Chavez* presumption does not prohibit a subsequent ALJ from considering new medical information and making an updated RFC determination." *Alekseyevets v. Colvin*, 524 F. App'x 341, 344 (9th Cir. 2013) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (prior ALJ's findings "cannot be reconsidered by a subsequent [ALJ] absent new information not presented to the first [ALJ]")). Medical evaluations conducted after a prior adjudication necessarily constitute "new and material information not presented to the first ALJ." *Stubbs-Danielson v. Astrue*, 539 F.3d at 1173; *Nursement v. Astrue*, 477 F. App'x 453, 454 (9th Cir. 2012).

In the prior decision, Plaintiff was restricted to performing "simple, repetitive tasks in a non-public work setting." [AR 157.] In the current case, the ALJ considered new and material medical evidence to update Plaintiff's RFC. [AR 22-23, 25, 28-34, 615, 761.] The ALJ found that Plaintiff had some greater physical restrictions (*i.e.*, stand and/or walk for 4 hours in an 8-hour workday for only 30 minutes at a time before needing to sit for 5 minutes), as well as additional mental restrictions (*i.e.*, no more than occasional, superficial, and non-intense interactions with co-workers and supervisors, and no interaction with the public). [AR 22-23, 28, 34, 59, 87, 157.] The ALJ did not err in making an updated RFC assessment based on the new medical evidence. *See Stubbs-Danielson*, 539 F.3d at 1173; *Alekseyevets*, 524 F. App'x at 344; *Nursement*, 477 F. App'x at 454.

Further, as the Commissioner points out, any error was harmless, as "the ultimate non-disability decision would remain regardless of whether the limitation to simple, repetitive tasks," was included in Plaintiff's RFC. [Def.'s Br. at 6]; *see Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (an error is harmless where it does not negate the validity of the ALJ's ultimate conclusion). In particular, the Commissioner notes that Plaintiff has not shown how the limitation to "simple, repetitive tasks" differs from the limitation to "non-complex, routine tasks that are object-oriented," such that the performance of the other jobs identified at step five of the sequential analysis would be precluded. The Court agrees with the Commissioner with respect to the assembler and inspector jobs, as discussed in more detail below.[4]

---

[4] A commonsense understanding of the term "simple, repetitive tasks" suggests tasks that are easy or not complex and performed in a recurring or routine manner. The definitions of the terms "non-complex" and "routine" have similar meanings. "Non-complex" describes something that is "simple" or "easy to [analyze] or understand." https://en.oxforddictionaries.com/definition/non-complex. The term "routine" refers to a "sequence of actions regularly followed."

7

**B. Plaintiff's Ability to Perform Other Work**

Plaintiff contends the evidence does not support the ALJ's determination that he is able to perform other work that exists in significant numbers in the economy. [Pltf.'s Br. at 8-10; Reply at 3-5.]

The VE testified that a hypothetical person with limitations similar to Plaintiff's RFC, including a limitation to non-complex, routine tasks, could perform the jobs of assembler (Department of Labor's Dictionary of Occupational Titles ("DOT") 729.687-010, light, unskilled, Specific Vocational Preparation ("SVP") 2), inspector (DOT 529.587-014, light, unskilled, SVP 2), and document preparer (DOT 249.587-018, sedentary, unskilled, SVP 2). [AR 35-36, 67.] At the hearing, Plaintiff's attorney asked the VE if the document preparer job required Level 3 reasoning and whether the hypothetical person would be capable of performing jobs requiring Level 3 reasoning.[5] [AR 68-69.] The VE confirmed that the document preparer job requires Level 3 reasoning and that an individual with Plaintiff's limitations could perform jobs requiring Level 3 reasoning at the unskilled level. [AR 68-69.] When asked if her testimony was based on the DOT, the VE testified: "It's based upon my experience evaluating these types of positions. They're entry level positions. They're learned in a short period of time and they're dealing with things rather than people and it shouldn't require the individual to have difficulty if

---

https://en.oxforddictionaries.com/definition/routine.

[5] DOT jobs classifications include a General Educational Development ("GED") component comprising three scales: Reasoning Development, Math Development, and Language Development. The GED reasoning, math, and language development scales range from Level 1 (low) to Level 6 (high). Level 3 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, Components of the Definition Trailer (4th ed. rev. 1991), available at 1991 WL 688702.

they're capable of unskilled work." [AR 69.] The VE further stated that a Level 3 reasoning job is an object-oriented job. [AR 69.] Relying on the VE's testimony, the ALJ determined that Plaintiff could perform the alternative jobs of assembler, inspector and document preparer, and concluded that he was not disabled. [AR 35-36.]

Plaintiff contends the ALJ erred by failing to resolve an apparent conflict between the VE's testimony that a limitation to non-complex, routine tasks is consistent with the demands of Level 3 reasoning, as required by the document preparer job. [Pltf.'s Br. at 9 (citing *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (holding that the ALJ erred in failing to resolve the apparent conflict that existed between the ALJ's finding that the claimant retained the RFC to perform "simple, routine, or repetitive work" and the Level 3 reasoning requirements of the alternative cashier and surveillance system monitor jobs that the ALJ found the claimant capable of performing)).] The Commissioner responds that the VE offered a sufficient explanation to resolve any potential conflict with the DOT. [Def.'s Br. at 8-9; AR 69.]

At step five, the ALJ has the burden of establishing, through the testimony of a VE or by reference to the Medical-Vocational Guidelines, that the claimant can perform alternative jobs that exist in substantial numbers in the national economy. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The Commissioner "routinely relies" on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT].").  Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform alternative jobs and the DOT's description of those jobs, the ALJ must ask the VE "to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on the VE's testimony.

9

*Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016); *see also Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007) (stating that "neither the [DOT] nor the [VE] evidence automatically trumps when there is a conflict," and that the ALJ must determine whether a conflict exists, whether the VE's explanation for the conflict is reasonable, and whether a basis exists for relying on the VE rather than the DOT); *see also* Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled."). The ALJ's failure to resolve such a conflict may preclude a reviewing court from determining whether the ALJ's decision is supported by substantial evidence. *See Massachi*, 486 F.3d at 1154 (stating that "we cannot determine whether the ALJ properly relied on [the VE's testimony]" due to the ALJ's failure to address conflicts with the DOT).

Here, an apparent conflict existed between Plaintiff's limitation to non-complex, routine tasks and the Level 3 reasoning requirement of the document preparer job. *See Zavalin*, 778 F.3d at 846-47; *see also* n. 3, *supra*. Although the VE indicated that no conflict existed, her explanation was not reasonable. For example, the VE's testimony that the job was "entry level" or "learned in a short period of time," addressed the job's SVP level, not the reasoning required by the job. [AR 69]; *see* DOT, App. C (SVP level measures "the amount of lapsed time" it takes a worker to learn the skills necessary to perform a job). Similarly, the VE's testimony that a person limited to non-complex, routine tasks could perform a job requiring Level 3 reasoning if the job was unskilled, conflated skill level with reasoning level. *See* DOT, App. C (the GED scale, which includes the reasoning development division, "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance"); *Standafer v. Colvin*, No. EDCV14-1541 AJW, 2016 WL 633854, at *3 (C.D. Cal. Feb. 16, 2016)

("[t]he reasoning level of a job is distinct from its skill level."). As the ALJ failed to elicit a reasonable explanation for the apparent conflict, his reliance on the VE's testimony, with respect to the document preparer job, was error. *See Gutierrez v. Colvin*, 844 F.3d at 807-08; *see Massachi*, 486 F.3d at 1153-54; SSR 00-4P.

Plaintiff next challenges the number of available assembler and inspector jobs in the economy as not significant. [Pltf.'s Br. at 10.] The VE testified that based on Plaintiff's limitations, there would be 1,500 assembler jobs available nationally and 5,000 inspector jobs available nationally. [AR 67.] Relying on *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014), Plaintiff argues that because the Ninth Circuit described 25,000 jobs in the nation as a "close call," the Court cannot confidently conclude that "no reasonable ALJ would consider 6,500 jobs in the nation insignificant." [Pltf.'s Br. at 10.]

While the Ninth Circuit has never set out a bright-line rule for what constitutes a significant number of jobs, the Court finds that in light of a recent unpublished Ninth Circuit case, 6500 jobs may not constitute a significant number in the national economy. *See Randazzo v. Berryhill*, No. 16-55907, 2017 WL 6374297 (9th Cir. Dec. 13, 2017) (10,000 jobs in the national economy may not be significant); *Gutierrez*, 740 F.3d at 528-29 (holding that 25,000 jobs in the national economy presented a close call but was sufficient and 2500 jobs in California was sufficient); *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012) (holding that 135 jobs in Greater Metropolitan Los Angeles and Orange County area was not a significant number). Accordingly, reversal is warranted to permit the ALJ to follow up with the VE about Plaintiff's ability to perform this and other representative occupations.[6]

---

[6] As an additional basis for arguing that the ALJ's failure to reconcile the apparent conflict between the DOT and the VE's testimony was harmless error, the Commissioner argues that Plaintiff's educational background, successful performance of skilled and semi-skilled jobs in the past, and the medical evidence

11

## C. Plaintiff's Ability to Respond Appropriately to Criticism from Supervisors

Plaintiff also argues that the ALJ failed to resolve a "facial conflict" between the VE's testimony that a person with limitations to "occasional, superficial, and non-intense interactions with coworkers and supervisors" would be able to meet the mental demands of unskilled work. [Pl. Memo at 10-12; Reply at 5-7.] In support of this argument, Plaintiff relies upon the Program Operations Manual System ("POMS") list of mental abilities necessary for performing unskilled work, which provides that a "claimant must be able to accept instructions and respond appropriately to criticism from supervisors." POMS DI 25020.010B.3.k. Plaintiff argues that remand for further proceedings is required because the ALJ did not consider Plaintiff's "inability to tolerate criticism from supervisors" in regards to his ability to perform unskilled work. [Pl. Memo at 12.]

Plaintiff fails to demonstrate any obvious conflict between Plaintiff's RFC to "occasional, superficial, and non-intense interactions with coworkers and supervisors" and the VE's testimony that a person with those limitations could perform other work. [AR 67-69.] Contrary to Plaintiff's suggestion, the ALJ did not find that Plaintiff is unable to accept criticism in the workplace. Rather, the ALJ rejected marked limitations in social functioning (*i.e.*, the ability to interact and

---

demonstrate that he is able to perform the document preparer job. [Def.'s Br. at 10-11 (citing DOT 249.587-018).] However, the Commissioner overlooks certain aspects of the document preparer position that could require more than the ability to perform non-complex, routine tasks, such as reproducing document pages "as necessary" and filing document folders for processing "according to index code and filming priority schedule." DOT 249.587-018. As the Commissioner does not explain how these tasks can be performed with Plaintiff's RFC, the Court declines to find the ALJ's error harmless on this basis. The Court notes, however, that the VE will very likely be able to identify additional jobs Plaintiff can perform, so that, in the Court's view, a finding that Plaintiff is disabled is likely not warranted. However, it is not the Court's place to make that determination on the present record.

12

respond appropriately to criticism from supervisors) as inconsistent with Plaintiff's treatment records and the opinion of the medical expert, who found Plaintiff capable of occasional interaction with co-workers and supervisors. [AR 31-32, 59, 690, 693, 699.] Plaintiff does not contest that determination.

Moreover, the POMS "is not binding on either the ALJ or on a reviewing court." *Shaibi v. Berryhill*, 870 F.3d 874, 880 (9th Cir. 2017) (citing *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010); *Lowery v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (holding that POMS is an internal procedure manual that does not impose judicially enforceable duties on an ALJ). To the extent it provides persuasive authority, POMS DI 25020.010B.3.k does not establish a conflict between the VE's testimony and the DOT, as Plaintiff has not shown that he is unable to tolerate criticism from supervisors.

Accordingly, the Court finds that the POMS presents no reasonable basis for challenging the ALJ's reliance on the VE's testimony.

## CONCLUSION

When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 874 F.3d 1130, 1132 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Commissioner*, 775 F.3d 1090, 1099 (9th Cir. 2014). But the Court does have discretion to make a direct award of benefits under the "credit-as-true" rule, which asks whether: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Each part of this three-part standard must be satisfied for the Court to

remand for an award of benefits and it is only the "unusual case" that meets this standard. *Benecke*, 379 F.3d at 595; s*ee, e.g.*, *Treichler*, 775 F.3d at 1105 ("[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony."). Moreover, if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court must remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." *Garrison*, 759 F.3d at 1021; *see also Leon*, 874 F.3d at 1133 ("an award under [the credit-as-true] rule is a rare exception, and the rule was intended to deter ALJs from providing boilerplate rejections without analysis"); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (as amended) ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").

Here, further proceedings would be useful to allow the ALJ to follow-up with the VE about Plaintiff's ability to perform other representative occupations. Therefore, remand for further proceedings is required. *See Treichler*, 775 F.3d at 1107; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter is REMANDED for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

DATED: January 23, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE